Michael Zoldan; AZ Bar No. 028128
Jessica Miller; AZ Bar No. 031005
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com
jmiller@zoldangroup.com

Attorneys for Plaintiff
Linda Stuart-Davis

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Linda Stuart-Davis**; an Arizona resident, | Case No. |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| **PopHealthcare LLC**, an Arizona Limited Liability Company, | **(Jury Trial Requested)** |
| Defendants. | |

Plaintiff Linda Stuart-Davis ("**Stuart-Davis**"), for her Verified Complaint against Defendant PopHealthcare LLC ("**PopHealthcare**"), hereby alleges as follows:

## PARTIES

1. Plaintiff is, and at all times relevant hereto was, a resident of Maricopa County, Arizona. At all times relevant to this lawsuit, Stuart-Davis was an "employee" of PopHealthcare as defined in the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act, 42 U.S.C.A. § 12101, *et seq.* (collectively referred to herein as the "**ADA**") and an "eligible employee" of PopHealthcare as defined in the Family and Medical Leave Act, 29 U.S.C.A. § 2601, *et seq* ("**FMLA**").

2. Upon information and belief, PopHealthcare is authorized to conduct business and is currently doing business in the State of Arizona. At all times relevant hereto, PopHealthcare was Stuart-Davis's "employer" as defined in the FMLA and the ADA.

## JURISDICTION AND VENUE

3. All acts complained herein occurred in Maricopa County, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to the ADA and FMLA.

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it is sufficiently related to her federal claims that they form part of the same case or controversy.

6. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

7. Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

8. Personal jurisdiction in this Court is proper.

9. Venue in this Court is proper.

## FACTUAL ALLEGATIONS

10. Stuart-Davis commenced employment with PopHealthcare as a Nurse

Practitioner in or around May of 2013.

11. On or about December 16, 2016, Stuart-Davis injured herself and required emergency medical treatment.

12. That same day, Stuart-Davis's husband informed Stuart-Davis's supervisor, Mary Marshall, that Stuart-Davis could not walk and would need medical leave for treatment or recovery.

13. Marshall confirmed receipt of the text message and instructed Stuart-Davis to register for sick time in the PopHealthcare ADP portal.

14. Stuart-Davis was not informed that her leave was eligible for FMLA.

15. Stuart-Davis' injury persisted, requiring two weeks of recovery and pain treatment with oxycodone.

16. Stuart-Davis provided a doctors' note for the absences.

17. Stuart-Davis was reminded on subsequent occasions to log her sick time in ADP.

18. Despite acknowledging that she required sick time for several weeks, PopHealthcare did not offer her job-protected leave under the FMLA.

19. On December 19, 2016, Stuart-Davis submitted a leave request that expressly stated she had a serious health condition and her physician submitted a doctor's note that requested two weeks of medical leave.

20. At various points throughout her medical leave, PopHealthcare demanded that Stuart-Davis perform work tasks.

21. When Stuart-Davis had been on FMLA-qualifying leave for approximately seven days, she was contacted by PopHealthcare and instructed to fill out a Continuity of

Care form for one of her patients.

22. As Stuart-Davis was on medical leave, she did not have access to the PopHealthcare server.

23. Stuart-Davis transcribed the information sought for the Continuity of Care form, and delivered the requested information via facsimile.

24. The Company claimed that Stuart-Davis' facsimile breached patient confidentiality under HIPAA.

25. On December 27, 2016, while Stuart-Davis was still on FMLA-qualifying leave, her supervisor Anitra Ellerby-Brown called and berated her for the alleged HIPAA violation.

26. Throughout this phone call, Stuart-Davis indicated that she was on medical leave and that she was under the influence of narcotic pain medication.

27. Stuart-Davis also opposed Ellerby-Brown's actions of calling her while she was on medical leave, claiming they were improper and unlawful.

28. Ellerby-Brown continued to argue with Stuart-Davis on the phone despite the fact Stuart-Davis repeatedly stated that she was taking narcotic drugs and felt heavily affected by them.

29. Ellerby-Brown also threatened to terminate Stuart-Davis, who by this time was sobbing due to the medication and unmerited threats.

30. Ellerby-Brown instructed Stuart-Davis that she was not allowed to contact any other PopHealthcare administrator.

31. Ellerby-Brown also directed Stuart-Davis to report in-person to IT to return her work computers.

32. When PopHealthcare IT contacted Stuart-Davis directly, she was informed that she had been terminated.

33. On or about December 28, 2016, Stuart-Davis was disciplined with Corrective Action and placed on a Performance Improvement Plan by Ellerby-Brown for using unprofessional language, being unwilling to accept constructive criticism, lack of effective communication, and a litany of alleged offenses related to Ellerby-Brown's conversation with Stuart-Davis the day before.

34. Stuart-Davis had no disciplinary history whatsoever before being placed on a written warning and performance improvement plan.

35. During that conversation and at the time she was disciplined, Stuart-Davis was under a doctor's care, taking narcotic pain medication, and on medical leave for a FMLA-qualifying reason.

36. Stuart-Davis once again complained to human resources personnel that it was against the law to assign work tasks and discipline her while she was on medical leave.

37. On or about December 30, 2016, Stuart-Davis' treating physician submitted FMLA paperwork indicating that she would need four weeks of medical leave due to the injury.

38. Stuart-Davis exhausted FMLA and requested two more weeks of medical leave under the ADA.

39. On or about March 14, 2017, Stuart-Davis once again complained in writing through counsel that PopHealthcare's actions during her medical leave violated the FMLA and ADA.

40. The March 14, 2017 correspondence also reminded PopHealthcare of its

continuing obligations to accommodate Stuart-Davis upon her return to work.

41. Immediately after Stuart-Davis' medical leave expired, she was issued another written warning dated April 3, 2017.

42. The written warning disciplined her for the exact same conduct that was the subject of her December 2016 written warning and performance improvement plan.

43. Pophealthcare also reduced Plaintiff's work schedule when she returned to work in retaliation for her complaints and use of medical leave.

44. On or about April 17, 2017, Stuart-Davis disputed her wages with the company, asserting that she had not been correctly paid for approximately 73 patients she had seen.

45. In response, on or about April 27, 2017, Stuart-Davis was issued a Final Written Warning by Ellerby-Brown.

46. The Final Written Warning alleged that her April 17, 2017 communication disputing wages "potentially" violated HIPAA.

47. Ellerby-Brown threatened to report Stuart-Davis to the federal authorities for the "potential" violation.

48. The disciplinary action was imposed in retaliation for Stuart-Davis' complaint that Pophealthcare failed to pay her owed wages.

49. Stuart-Davis was issued another Final Written Warning on August 8, 2017 for allegedly "acting selfishly" in front of patients at a LabCorp facility.

50. The Final Written Warning was sent to her electronically.

51. There was no patient health information on the face of the document, which just contained the allegations related to Stuart-Davis' alleged behaviors.

52. Stuart-Davis was fired for emailing the Final Written Warning.

53. Pophealthcare claimed that the document contained protected patient health information.

54. The Company's claimed justification for Stuart-Davis' discharge is pretextual.

**COUNT I**
**INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**

55. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

56. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right under the FMLA.  29 U.S.C. § 2615.

57. Defendant employs more than 50 employees and as such, is an employer for purposes of FMLA, subject to FMLA requirements.

58. Plaintiff was an "eligible employee" entitled to take leave pursuant to the FMLA.

59. Plaintiff has a "serious health condition" as defined by the FMLA and was incapacitated as a result of that condition.

60. Plaintiff provided sufficient notice of her need to take leave under the FMLA.

61. Plaintiff was disciplined for conduct that occurred while she was on medical leave.

62. Defendant interfered with Plaintiff's medical leave by contacting her about work-related tasks, failing to offer her FMLA leave, and disciplining her for conduct that occurred while she was on leave.

63. Defendant used Plaintiff's use of FMLA as a negative factor in the decision

to discipline her and terminate her employment.

64. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, inter alia, unnecessarily scrutinizing her work performance, reducing her work schedule, and termination of employment.

65. Plaintiff is entitled to recover damages against Defendant in an amount to be proven at trial.

## COUNT II
## RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

66. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

67. Defendant employs more than 50 employees and as such, is an employer for purposes of the FMLA, subject to FMLA requirements.

68. Plaintiff was an "eligible employee" and entitled to take leave pursuant to the FMLA.

69. Plaintiff has a "serious health condition" as defined by the FMLA and was incapacitated as a result of that condition.

70. Plaintiff exercised her rights under the FMLA.

71. Plaintiff complained that her supervisor was violating the FMLA and opposed conduct that is unlawful under the FMLA.

72. Defendant discriminated and retaliated against Plaintiff by, inter alia, altering the terms and conditions of her employment and terminating her due to her complaints.

73. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, inter alia, termination of

employment.

74. Plaintiff is entitled to recover damages against Defendant in an amount to be proven at trial.

## COUNT III
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

75. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

76. The ADA prohibits discrimination against a qualified individual with a disability in regard to terms, conditions and privileges of employment. 42 U.S.C. § 12112(a).

77. Plaintiff has a physical impairment that substantially limits a major life activity.

78. In the alternative, the length of time during which Plaintiff has experienced symptoms, and for which she will continue to suffer from, constitutes a record of impairment.

79. Plaintiff's injury is a disability as defined by the ADA.

80. Defendant is an employer under the ADA.

81. Defendant knew of Plaintiff's physical limitations.

82. Defendant treated Plaintiff disparately as compared to other similar situated non-disabled employees because of her disability.

83. Plaintiff is qualified to perform the essential functions of her position.

84. Plaintiff requested reasonable accommodations to allow her to perform the essential functions of her position.

85. Defendant discriminated against Plaintiff by failing to provide her with

reasonable accommodations and terminated her due to her disabilities.

86. Defendant likewise failed to engage in the interactive process in good faith by reducing Plaintiff's work schedule beyond what was requested by her treating physician.

87. Accommodating Plaintiff's reasonable requests would not inflict undue hardship on Defendant.

88. Plaintiff's reasonable requests would not pose a direct threat to the health or safety of other individuals in the workplace.

89. Plaintiff's disability was the but-for cause of Defendant's discriminatory conduct.

90. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, inter alia, termination of employment.

91. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT IV
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

92. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

93. The ADA prohibits retaliation against any individual because such individual engaged in protected activity under the ADA.  See 42 U.S.C. § 12203(a).

94. Plaintiff engaged in protected activity by requesting reasonable accommodations and complaining that her supervisor was discriminating against her.

95. Defendant retaliated against Plaintiff by, inter alia, refusing to investigate her complaints, prohibiting her from making complaints or contacting other resources within

the company, reducing her work schedule beyond what was requested in doctors' notes and terminating her due to engaging in protected activity.

96. Plaintiff's disability was the but-for cause of Defendant's retaliatory conduct.

97. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, inter alia, termination of employment.

98. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT V
## ARIZONA EMPLOYMENT PROTECTION ACT

99. Plaintiff reasserts and realleges each and every assertion and allegation in this complaint as if fully set forth herein.

100. At all relevant times, Plaintiff was an employee under A.R.S. § 23-1501.

101. At all relevant times, Defendant was an employer under A.R.S. § 23-1501.

102. Plaintiff complained in a reasonable manner that Defendant violated Arizona law by failing to pay her wages owed.

103. Defendant violated A.R.S. § 23-1501(3)(c)(ii) by terminating Plaintiff's employment in retaliation for her disclosure in a reasonable manner that she had information or a reasonable belief that the employer, or an employee of the employer, had violated, was violating, or would violate Arizona law to either the employer or a representative of the employer who the employee reasonable believed was in a managerial or supervisory position and had the authority to investigate the information provided by the employee and to take action to prevent further violations of Arizona law.

104. Plaintiff reasonably believed that Defendant was violating Arizona law.

105. Plaintiff disclosed these violations of law to individuals in managerial or

supervisory positions that had the authority to investigate or take action to prevent further violations.

106. Plaintiff was terminated for making these complaints.

107. Plaintiff was damaged in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant, as follows:

A. An award of damages for all counts in an amount to be proven at trial;

B. An award of back pay and front pay;

C. Reasonable attorneys' fees, costs and other expenses;

D. For an award of liquidated damages under the FMLA;

E. For the Court to award compensatory damages and punitive damages;

F. An award of pre and post judgment interest; and

G. Any other remedies or judgments deemed just and equitable by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED October 4, 2018.

**ZOLDAN LAW GROUP, PLLC**

By: /s/Jessica Miller
14500 N. Northsight Blvd.
Suite 133
Scottsdale, AZ 85260
Attorneys for Plaintiff Linda Stuart-Davis

## VERIFICATION

Plaintiff Linda Stuart-Davis declares under penalty of perjury that she has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on her personal knowledge, except as to those matters stated upon information and belief, and as to those matters, she believes them to be true.

*/s/ Linda J. Stuart-Davis*
Linda Stuart-Davis